**MY–TECH, INC., Appellant,**

v.

**UNIVERSITY OF NORTH TEXAS HEALTH SCIENCE CENTER AT FORT WORTH, Slobodan Dan Dimitrijevich, and Peter Raven, Appellees.**

**No. 05–04–01150–CV.**

Court of Appeals of Texas, Dallas.

June 22, 2005.

Shannon Jamison, Aubrey D. Pittman, The Pittman Law Firm, P.C., Dallas, for appellant.

Kimberley S. Ellars, Office of the Attorney General, Financial Litigation Division, Austin, for appellees.

Before Justices MORRIS, LANG, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

My–Tech, Inc. appeals the trial court's order sustaining the plea to the jurisdiction filed by University of North Texas Health Science Center at Fort Worth and Slobodan Dan Dimitrijevich and Peter Raven in their official capacities (collectively UNTHSC).[1] My–Tech offers four arguments that UNTHSC waived sovereign immunity: (1) by its conduct; (2) by seeking affirmative relief against My–Tech; (3) because UNTHSC's actions constituted an unconstitutional taking; and (4) because My–Tech sought a declaratory-judgment. For the reasons that follow, we reject My–Tech's arguments and affirm the trial court's order.

### FACTUAL BACKGROUND

In November 1997, My–Tech and UNTHSC entered into a contract involving blood vessel construction research. During the performance of the contract, My–Tech alleged that UNTHSC failed to abide by the terms because it assigned credit for an invention to another company. My–Tech subsequently filed suit against UNTHSC seeking a declaratory judgment and damages for breach of contract, negligence, and fraud. UNTHSC filed a plea to the jurisdiction and asserted that it had not waived sovereign immunity. The trial court agreed with UNTHSC and granted the plea to the jurisdiction. This appeal ensued.

### SOVEREIGN IMMUNITY

UNTHSC is a state institution and thus benefits from the doctrine of

1. My–Tech's petition named Dimitrijevich and Raven in their individual and official capacities. The trial court's order granting the plea to the jurisdiction dismissed the claims as to Dimitrijevich and Raven in their official capacities only. Our opinion is likewise limited.

sovereign immunity. "[S]overeign immunity, unless waived, protects the State of Texas, its agencies and its officials from lawsuits for damages, absent legislative consent to sue the State." *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). The doctrine is comprised of two distinct concepts: (1) immunity from suit (barring a lawsuit unless the legislature expressly gives its consent to suit) and (2) immunity from liability (protection from judgments even if the legislature has expressly given its consent to the suit). *See id.; see also Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex.2002).[2]

### STANDARD OF REVIEW

■■■ A plea to the jurisdiction is a dilatory plea by which a party challenges a trial court's authority to determine the subject matter of an action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Subject matter jurisdiction is a question of law subject to de novo review. *IT–Davy*, 74 S.W.3d at 855. In performing this review, we do not look to the merits of the plaintiff's case but consider only the pleadings and evidence relevant to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

### WAIVER BY CONDUCT

In its first issue My–Tech argues that UNTHSC waived sovereign immunity by its conduct. Among other things, My–Tech argues that UNTHSC misused funds that My–Tech provided for UNTHSC, refused to provide intellectual rights that My–Tech argues it paid for, and wrongfully assigned research to other companies.

■■■ My–Tech initially relies on a Texas Supreme Court footnote in *Federal Sign* and a concurring opinion in the same case. The identified footnote from *Federal Sign* discusses the scope of the majority's opinion, which concluded that Texas Southern University had not waived its immunity. The footnote states, "There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." *Fed. Sign*, 951 S.W.2d at 408 n. 1. Subsequently, the supreme court has noted that several appellate courts have relied on that language to create a "judicially-imposed, equitable waiver of immunity from suit by conduct." *IT–Davy*, 74 S.W.3d at 856. However, the supreme court later discussed the footnote and reaffirmed "that it is the legislature's sole province to waive or abrogate sovereign immunity." *See id.* at 857 ("Creating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections and this would defeat many of the doctrine's underlying policies.").[3]

My–Tech next directs this Court to a more recent supreme court case, *Catalina Development Inc. v. County of El Paso*, 121 S.W.3d 704 (Tex.2003). My–Tech argues the supreme court stated that *Federal Sign* still stands for the proposition that "some circumstance might warrant recognizing a waiver by conduct." My–Tech cited the quoted language from *Catalina*, but My–Tech quotes only part of

---

2. Additionally, in 1999 the legislature enacted an administrative process to resolve breach-of-contract claims against the State, but this option is not applicable to contracts executed or awarded on or before August 30, 1999. *See IT–Davy*, 74 S.W.3d at 853.

3. My–Tech, however, seeming to disregard the *IT–Davy* language rejecting a waiver-by-conduct possibility, cited only the concurring opinion from that case. *See IT–Davy*, 74 S.W.3d at 861 (Hecht, J., concurring).

the language in a sentence. *See id.* at 706. In reviewing the complete sentence in *Catalina* and the surrounding text, we do not interpret *Catalina* as actually creating a waiver-by-conduct exception. The complete sentence reads: "Although in *Federal Sign* we suggested that some circumstances might warrant recognizing a waiver by conduct, the equitable basis for such a waiver simply does not exist under this set of facts." Accordingly, we conclude the supreme court was merely acknowledging its *Federal Sign* footnote and not creating a waiver-by-conduct exception.

My–Tech relies on the *Federal Sign* footnote and urges this Court to fashion a waiver-by-conduct exception. The supreme court has not provided such an exception, and we decline to create one in this case. We instead follow the supreme court precedence that it is the legislature's sole province to waive sovereign immunity. *See, e. g., Lubbock County v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 585 (Tex.2002) ("It is not the function of a court of appeals to abrogate or modify established precedent."). We resolve My–Tech's first issue against it.

## WAIVER BY SEEKING AFFIRMATIVE RELIEF

In its second issue, My–Tech argues that UNTHSC waived its sovereign immunity by seeking affirmative relief in its second amended answer. We disagree.

A governmental entity may waive immunity from suit by filing a suit for damages. *Reata Const. Corp. v. City of Dallas,* No. 02–1031, 2004 WL 726906, at *3, —— S.W.3d ——, —— (Tex. Apr. 2, 2004) (motion for rehearing granted Oct. 15, 2004). This Court extends that rule to find that counterclaims filed by the State waive immunity. *City of Dallas v. Bargman,* No. 05–04–00316–CV, 2004 WL 2222510, at *4, —— S.W.3d ——, —— (Tex.

App.-Dallas 2004, no pet.); *City of Irving v. Inform Constr., Inc.,* 143 S.W.3d 371, 374 (Tex.App.-Dallas 2004, pet filed.). However, an affirmative defense is distinguishable from a counterclaim.

To determine whether a defendant's answer asserts a counterclaim or an affirmative defense, courts should analyze the facts alleged. *Flukinger v. Straughan,* 795 S.W.2d 779, 787 (Tex.App.-Houston [14th Dist.] 1990, writ denied). We ask whether the defendant could have maintained the claim as an independent suit. *See id.* However, to determine if a defendant's prayer for general relief is a counterclaim or an affirmative defense, we look at the general purpose of the pleadings. *Thomason v. Sherrill,* 118 Tex. 44, 45, 10 S.W.2d 687, 687 (1928). If there is no prayer for affirmative relief, matters that are pleaded defensively do not present a counterclaim. *See id.*

My–Tech contends that UNTHSC sought affirmative relief by pleading that My–Tech owed it $176,244.13 under the contract and praying for general relief from the trial court. UNTHSC, in its answer—without waiving and subject to its immunity argument—pleaded the affirmative defense of failure to perform. UNTHSC stated My–Tech owed UNTHSC funds under the contract, and because My–Tech had not paid, it had failed to prove it performed. UNTHSC did not however, request the unpaid amount as damages owed to it.

Although UNTHSC could have brought a claim seeking damages for the alleged unpaid amount, it did not make a claim for that money in its answer. The purpose of the discussion of the alleged unpaid amount was merely defensive. UNTHSC did not seek any affirmative relief. Accordingly, we conclude UNTHSC's answer did not assert a counterclaim. And My–

Tech does not argue that an affirmative defense waives immunity. We resolve My–Tech's second issue against it.

## UNCONSTITUTIONAL TAKING

In its third issue, My–Tech argues that sovereign immunity does not bar its constitutional takings claim against UNTHSC. However, this claim was not pleaded at the trial court level. Because this was not raised as a claim below, this argument reaches beyond our review on appeal. *See Benefit Trust Life Ins. Co. v. Littles,* 869 S.W.2d 453, 468 (Tex.App.-San Antonio 1993), *vacated for settlement,* 873 S.W.2d 704 (1994); *see also Mitchell v. Bank of America, N.A.,* 156 S.W.3d 622, 629–30 (Tex.App.-Dallas 2004, pet. denied). We resolve My–Tech's third issue against it.

## WAIVER BY THE DECLARATORY JUDGMENT ACT

In its fourth issue, My–Tech argues that sovereign immunity does not preclude their declaratory judgment claim. We disagree.

The Uniform Declaratory Judgment Act provides that a person may seek declaratory relief by asking the court to determine its rights, status, and obligations under a contract. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a) (Vernon 1997). The supreme court has found immunity to be waived under the Act when attorney's fees are sought in suits to construe legislative pronouncements. *See Tex. Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994). However, as the supreme court stated in *IT–Davy,* that waiver does not allow private parties to sue the State for money damages. 74 S.W.3d at 860.

*IT–Davy* involved both a breach-of-contract claim and a declaratory judgment claim. IT–Davy asked the trial court to declare that it had performed additional work and incurred additional expenses beyond its contract's scope, and thus, the State owed it more money. *Id.* at 859. The supreme court concluded that the claim under the Act was merely a tactic to confer jurisdiction on the trial court to decide the breach-of-contract claim. The court concluded this request did not waive the State's immunity. *Id.*

Similarly here, My–Tech's claim requested the trial court to declare: (1) UNTHSC's obligations, (2) My–Tech's right, title, and interest to the developed technology, and (3) UNTHSC's preclusions regarding the technology developed under the agreement. These are rights and obligations that are enumerated as terms in the contract—the same contract My–Tech has alleged was breached. Akin to IT–Davy's claim, My–Tech's claim seeking dual relief would circumvent the doctrine of sovereign immunity by conferring jurisdiction for its main breach-of-contract claim. This is not allowed. *See IT–Davy,* 74 S.W.3d at 859. We resolve My–Tech's fourth issue against it.

We affirm the trial court's order.